Henry v. Watson and the City of Utica Police. I'm sorry, excuse me, v. Watson.  My name is Zachary Warren and I represent the defendant appellants James Watson, Joshua Skbinski, and Titus Kikone in regards to this appeal. With the court's permission, I'd like to reserve one minute for rebuttal. Thank you. I have four points that I would like to discuss with the court today, and for any arguments that I don't address, I would rely on the arguments raised in my brief. However, I'd certainly answer any questions the court might have. The first point I'd like to discuss with the court is the lack of any clearly established law concerning the domestic violence victims' 14th Amendment substantive due process rights when they conflict with the accused's 4th Amendment rights. The second point I'd like to discuss with the court today is whether the district court correctly applied the fruits of the poisonous tree doctrine in a section 1983 claim. The third point I'd like to discuss with the court is whether there is any clearly established law saying that a pre-deployment taser warning must be given before an officer does so. And fourth and finally, I would argue to the court that the officers were not deliberately indifferent to the minor plaintiff's rights when they tased plaintiff Henry in the back. So moving to my first point, whether there are any clearly established cases that balance the domestic violence victims' 14th Amendment substantive due process rights, particularly in a state-created danger theory, against the accused's constitutional rights. Pretty much in this case, 4th Amendment claims. So we start with the district court's analysis, and they agreed with the plaintiff's argument that in order to have a state-created danger claim for the domestic violence victim, you need affirmative action on behalf of the police. And this is where we respectfully disagree. If we look at this court's Okun holding, it said in Okun that repeated sustained action in the face of domestic violence can be the basis for implicit prior assurances such that the domestic violence actor believes they could act with impunity. And this is- It was outside of the house, right? Yes. So why was it necessary for them to enter in order to protect her? And I would submit, Your Honor, that it takes roughly 200 to 300ths of a second in order for an untrained individual to pull a firearm and fire shots at an individual. The record is somewhat- Excuse me. They wanted her to go to the door and tell him he was under arrest. Correct. That doesn't sound like they're concerned about her being shot in a tenth of a second. That is a good point, Your Honor, but that was because they were trying to comply with the New York Civil Procedure Law, which requires a citizen's arrest on that section. I don't believe-I'm sorry, I don't have the actual section. But the interplay is there is that the sworn to statement was made by Daniel Williams, the domestic violence victim, and in order to do that, the officers, because the domestic violence occurred outside of their presence, the way that they are-the procedure is for the victim to say that the individual is under arrest, and then the officers go in and affect the rest. Additionally, the officers were there to provide any cover for her. And moreover, back to the original question, why did they wait? Again- If the officers did not have a warrant but had, let's call it-well, we have to call it probable cause, but were without a warrant, could they have gone in and done just what they did? Yes. No warrant? With no warrant, if they had exigent circumstances, with no warrant, they could have made entry into the home. What were the exigent circumstances? Well, in this case, we would say that if we look at-the district court relied heavily on Officer Skabinski's testimony because he testified at the suppression hearing. However, if we look-the actual decision to make entry was the scene commander, Sergeant Watson. It was his call. And he believed that at the time of making entry, that Plaintiff Penry was getting agitated. Isn't there a factual dispute as to whether there were exigent circumstances? The district court found so. But we respectfully, as we must on this appeal- But you're maintaining here that there were exigent circumstances. We're maintaining as a matter of law that based on the plaintiff's testimony- I mean, the first question is whether we even have jurisdiction over this appeal because you do appear to be taking issue with the facts. The district court assumed certain facts, including that there really weren't exigent circumstances or that at least it was arguable whether there were exigent circumstances. And you're pressing that, in fact, there were exigent circumstances. I will cite that the district court recognized that plaintiff- or, excuse me, Sergeant Watson's concern as to whether or not Plaintiff Penry was getting agitated. The district court recognized that fact. And I am saying it's a close call. No question about that. It is arguable, as Your Honors pointed out. But the whole point of the analysis, and as this court has said in the tyranny case that it's cited to, where it gave qualified immunity to police officers when they made an entry into a house without a warrant, citing the combustible nature- So you're making the argument based on the assumption that there were exigent circumstances. But isn't there a factual question as to whether, indeed, there were exigent circumstances? I guess my argument is, again, I go back to the fact that it is a close call. But on the facts, taken on plaintiffs, you know, in the light most favorable plaintiff, ask me much- Are you arguing now that there were exigent circumstances? I'm arguing that- You have to- Yes, there were exigent circumstances. Yes, that is part of my argument. How does that take the record in the light most favorable to the plaintiff? Because the district court- In the plaintiff's view. Because- You have to accept in order for us to have jurisdiction of the appeal. Well, in the plaintiff's- Well, first of all, the exigent circumstances, the law is viewed from what the police officer sees. And the district court- But we have to view it in the light most favorable to the plaintiff. The plaintiff has a different version of the facts than what the officers see, right? Absolutely. But I submit to your honors that in the district court's opinion, it was very careful. And the plaintiff never actually disputed the fact that he wasn't becoming more agitated. And there is some questions of whether or not threatening words had been made by the plaintiff Penry the day earlier. However, there is no dispute, and plaintiffs can see this much, and the district court finds those facts, that he had made those threats the day prior. They argue that we possibly took them out of context, things of that nature. But those statements were still made in the record. Is there not another factual dispute, whether the statements made before, whether he really meant them, whether he said them in response to the mother coming with a hammer? Again, these are factual disputes. Again, well, if you phrase it that way, sure. But again, if you look at the heart of this appeal, which is that these officers were in the street, faced with a domestic violence situation. It's very clear under this court's case law, with the Okin case, that if they were to just roll up and leave the scene, there is no question that based on these police reports, these records, that existed at that time, that something terrible would have happened. Say Plaintiff Penry would have killed Daniel Williams or possibly one of the children. But weren't there things they could have done that were short of entering into the house? Well, I — Negotiate. They did. They stood out there for 45 minutes. Actually, Sergeant Watson came down to the scene. They tried to talk him out of, you know, letting them into the home to make the arrest. So they did employ de-escalation techniques. And I'll cite two initially. This is an argument that you — well, I will suggest this is an argument you could certainly make to the fact finder if and when this case proceeds to trial. Yes, but you could bring those — sure, those would be perfectly appropriate arguments. You haven't lost your qualified immunity defense, and I assume if you request a proper instruction and the court gives a proper instruction, the jury could find that your clients, or some of them, are entitled to qualified immunity. But somebody has to find facts, find the facts, and determine what went on, at least out of the trial process. Again, under the qualified immunity standard in this court's jurisdiction, we're supposed to look to the district court's findings of facts, and ambiguities are resolved in the light most favorable to the plaintiffs. And I agree. The facts that we're speculating to here is what would have happened if they didn't enter. And we will never know that. We could have a trial. Still, we won't know what happened if they did not enter. But in this case, they erred on the side of caution, and they made the entry, and consequently, we're not here with a wrongful death. And the holding that you would like us to reach is, in light of Okun, police officers who are on the porch of some house where there are things going on inside, if they are ostensibly domestic violence, have some right to breach decades of constitutional law which says thou shalt not enter a house without a warrant, absent exigent circumstances. In order to protect a victim who is not in the house. Well, yes. Again, I would rely on the Tierney case, and not necessarily overturn decades of prior law, but just say that the law was not such clearly established in light of the Okun holding. Thank you. Nothing further, Your Honors. And you've reserved a minute for rebuttal. Yes. Thank you. May I? Oh, okay. We'll wait just one moment. May it please the Court, I represent the plaintiff, DMW, the minor child in this matter. The district court correctly found that a warrantless entry into the home is presumptively unreasonable under the Fourth Amendment. The Payton v. New York case, which is Police Academy 101, cautions police officers not to enter the home without a warrant or exigent circumstances coupled with probable cause. The qualified immunity defense, which is the burden of the defendants here, has not been met. There is questions of fact the court correctly found that need to be resolved with respect to that defense. Would you just marshal those facts just so I'm clear on at least what your side is arguing here? Certainly. The facts . . . The disputed facts. The disputed facts are whether or not there was exigent circumstances in that there was an emergency that required them to enter the home without a warrant, then tased my client's father, which caused my client to get injured. So the . . . Sorry. I'm sorry. Exigent circumstances do not involve the taser. Exigent circumstances are reasons that permit the police officers to enter the house without a warrant. Correct. Tasing is out of this. What are those reasons that are in dispute? Well, whether the child was in danger, and of course the case law sets forth those bases upon which you can determine whether a child is in danger, whether there's a fear of sexual abuse, whether there was imminent threat of harm, none of which occurred. You don't have any sexual abuse. No, and no imminent threat of harm. You're conceding there's no imminent threat of harm? Correct. There's no imminent threat of harm. He was asked to show the children on the porch. They looked through the window. They saw the children were fine. He had his visitation that day in a custodial order. He wanted to be left alone. They were clear that he wanted to be left alone. They were aware of that. They testified to that. And yet they contrived this citizen's arrest in order to avoid what they knew was unlawful. And I submit that that 14010 provision that does not allow the police officer under the CPL to arrest someone for a violation that occurs outside their presence is actually evidence of knowledge that what they were doing was unlawful. They knew they could not arrest him for the violation, so they planted Danielle in front of the door and said, you tell him he's under arrest, and then rushed the door. So there's at least a tacit acknowledgment that they did not have the authority to enter that threshold, not one inch, as the district court found. Nor did they have exigent circumstances. Nor did they have exigent circumstances. And the court also found that that front porch was curtilage per se, and that just going onto that front porch was, in fact, the Fourth Amendment violation. The factual circumstances that would constitute imminent danger to the child were not present as set forth in Hurlman v. Rice, 927 Fed 2nd, 74, Second Circuit case from 1991. The police officers are clearly aware that they can't get in there without a warrant. But to the point that was argued by my friend here from the city of Utica, that this Okun case presents some kind of a conflict of the law is really an argument that they're entitled to make a prophylactical arrest in order to avoid liability from a domestic violence victim. That is an apples and oranges argument that really is not appropriate here because Okun does not force them to act. Okun merely is a decision by this court that says that if you encourage domestic violence to the point where the offender feels that they can do it with impunity, then you may face liability. That does not equate to a police officer having some kind of a conflict about whether or not they make an arrest based upon a domestic violence victim's complaint of an occurrence that occurred outside the presence of the police officer. That need to protect themselves from liability does not excuse a violation of the Fourth Amendment or the substantive due process rights of my client and his father. Whether a right is clearly established is the same question as whether or not a reasonable officer would have known that the conduct in question was unlawful. That's the Walsh case. Clearly they knew that their conduct was unlawful because they used a civilian arrest in order to gain entry to the home and ultimately to harm my client. Would you agree, and then I'll let you sit down, would you agree that at trial the facts are not locked in and could be proven and support a claim of qualified immunity if they came out otherwise? Yes. They have not lost the right to assert that qualified immunity defense. What they have lost at this point in time is the right to a summary judgment on that defense. Yes. Thank you, Ms. Bosman. Good morning. May it please the Court, my name is Norman Deet. I represent Mr. Penry. Ms. Bosman stole most of what I was going to say to you. If the Court has any questions they'd like to ask me, I'd be more than glad to respond. But I don't want to duplicate what she has already brought up to you. I think we're fine. Thank you very much. That was pretty good in a few seconds, wasn't it? It was good. Thank you. Mr. Oren, you've reserved a minute. Yes. Thank you, Your Honors. Just briefly, to follow up on some questions that were brought regarding whether or not we're pushing a question of fact here on this appeal, you can look to the District Court's opinion. They did find that Defendant Watson found that Plaintiff Penry was getting more agitated. That's in the special appendix at page 33. So thank you, Your Honors. I have nothing further to address. Thank you, Mr. Oren. Thank you, all three of you. We'll reserve decision.